# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RANDALL W. CASEY,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv00066 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Randall W. Casey, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2009). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Casey protectively filed his applications for DIB and SSI on February 20, 2007, alleging disability as of March 1, 2006, due to dyslexia, learning disability, left arm and shoulder limitations and chronic pain. (Record, ("R."), at 147, 155-57, 160-65, 166, 188.) The claims were denied initially and on reconsideration. (R. at 90-92, 97, 102-04, 106-09, 111-12.) Casey then requested a hearing before an administrative law judge, ("ALJ"). Two hearings were held. One was held on July 17, 2008, (R. at 54-84); the second was held on February 9, 2009. (R. at 22-52.) Casey was represented by counsel at both hearings. (R. at 22, 54.)

By decision dated April 24, 2009, the ALJ denied Casey's claims. (R. at 14-21.) The ALJ found that Casey met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 16.) The ALJ also found that Casey had not engaged in substantial gainful activity since March 1, 2006, the alleged onset date. (R. at 16.) The ALJ determined that the medical evidence established that Casey suffered from severe impairments, namely hypertension, degenerative joint disease and lumbar strain, but he found that Casey did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-17.) The ALJ found that

Casey had the residual functional capacity to perform medium work[1] limited by an inability to perform overhead work with his right upper extremity or repetitive gripping with his right hand and an occasional ability to crawl and to climb. (R. at 17-20.) Therefore, the ALJ found that Casey could perform his past relevant work as a farm worker, a stocker, a rubber machine operator, an air condition laborer, a taxi driver and a dump truck driver. (R. at 20-21.) Thus, the ALJ found that Casey was not under a disability as defined under the Act and was not eligible for benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010).

After the ALJ issued his decision, Casey pursued his administrative appeals, (R. at 8), but the Appeals Council denied his request for review. (R. at 1-4.) Casey then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2010). The case is before this court on Casey's motion for summary judgment filed March 22, 2010, and the Commissioner's motion for summary judgment filed May 21, 2010.

## II. Facts

Casey was born in 1967, (R. at 155, 160), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2010). He has an eleventh-grade education, but attended special education classes. (R. at 192.) School records filed with the Commissioner show that Casey was designated "educable mentally retarded." (R. at 224, 227.) Casey has past relevant work experience as a farm worker, a stocker,

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do light and sedentary work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2010).

a rubber machine operator, an air condition laborer, a taxi driver and a dump truck driver. (R. at 179-83.) James B. Williams, a vocational expert, was present and testified at Casey's second hearing. (R. at 49-51.) Williams classified Casey's past work as a farm worker, a stocker, a rubber machine operator, a taxi driver and a dump truck driver as medium work. (R. at 49-50.) Williams classified the farm worker, the stocker and the dump truck driver jobs as unskilled. (R. at 49-50.) He classified Casey's rubber machine operator and taxi driver jobs as semi-skilled. (R. at 49-50.)

In rendering his decision, the ALJ reviewed school records from Roanoke County Schools; Crystal Spring Imaging; Dr. William H. Humphries, M.D.; Jeffrey B. Luckett, Ph. D., a licensed clinical psychologist; New Horizons Healthcare; Dr. George Wagner, M.D.; Dr. Richard Surrusco, M.D., a state agency physician; Dr. Shirish Shahane, M.D., a state agency physician; Joseph L. Leizer, Ph.D., a state agency psychologist; and Howard S. Leizer, Ph.D., a state agency psychologist. Casey's counsel submitted additional medical evidence from Dr. Wagner to the Appeals Council.[2]

On April 3, 2007, Dr. William Humphries, M.D., performed a consultative examination of Casey. (R. at 237-41.) Dr. Humphries noted that Casey's chief medical complaint was pain in his right shoulder and arm and lower back. (R. at 237.) Casey told Dr. Humphries that he was shot in the chest when he was eight years old

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

and that the bullet was still lodged in his right shoulder causing pain. (R. at 237.) Casey complained of pain, which was worse with any movement of his right arm and tingling and loss of sensation in his right arm. (R. at 237.)

Casey also complained of low back pain as a result of an assault five years earlier. (R. at 237.) He stated that he suffered low back pain most of the time, which was exacerbated by prolonged sitting or standing, walking or use of his back. (R. at 237.) Casey stated that he also suffered from pain in his knees for the previous 15 years. (R. at 238.) He stated that this pain would come and go, but was worse when squatting or bending the knees. (R. at 237.)

Dr. Humphries noted that Casey winced and appeared to demonstrate discomfort upon any movement of the right upper extremity. (R. at 238.) Dr. Humphries noted tenderness to palpation of the right trapezius muscle and the associated musculature of the right scapula and deltoid regions. (R. at 237.) Dr. Humphries's testing showed some lessened grip strength on the right as well as slower fine manipulation with the right hand. (R. at 239.)

Dr. Humphries noted normal range of motion in Casey's back with no spasm. (R. at 238.) Straight leg raises were negative to 90 degrees sitting bilaterally. (R. at 238.) Dr. Humphries did note that Casey's right paraspinous musculature of the thoracic and lumbar spine was tender to palpation. (R. at 238.) Dr. Humphries noted no muscle wasting, motor or sensory loss in Casey's lower extremities, but did note mild sensory loss in his right upper extremity. (R. at 239.)

Dr. Humphries stated that Casey was alert and oriented, and his thought and idea content were within normal limits. (R. at 239.) Casey's behavior, affect and grooming were appropriate. (R. at 239.) Dr. Humphries stated that Casey's intelligence appeared to be in the normal range. (R. at 239.)

Dr. Humphries stated that, as a result of his examination, Casey would be limited to lifting items weighing up to 50 pounds occasionally and up to 25 pounds frequently. (R. at 240.) Dr. Humphries stated that Casey could not perform overhead work or continuous gripping, grasping, pushing or pulling with the right upper extremity. (R. at 240.) Dr. Humphries stated that Casey could sit, stand and walk up to six hours in an eight-hour day and could only occasionally climb or crawl. (R. at 240.)

On April 26, 2007, Jeffrey B. Luckett, Ph.D., a licensed clinical psychologist, performed a consultative evaluation of Casey. (R. at 248-54.) Casey told Luckett that he completed the eleventh grade in school, but attended special education classes. (R. at 249.) Luckett noted that Casey was oriented and showed no evidence of psychotic disorder, delusions or hallucinations. (R. at 250.) The Beck Depression Inventory - Second Edition, ("BDI-II"), was administered, and Casey's performance placed him in the mild depression range. (R. at 250.) Casey told Luckett that he had no social life and stayed home to himself. (R. at 251.)

The Wechsler Adult Intelligence Scale - Third Edition, ("WAIS-III"), was administered, and Casey achieved a verbal IQ score of 84, a performance IQ score of 78 and a full-scale IQ score of 79. (R. at 252.) Dr. Humphries stated that Casey's

performance placed him in the borderline range of intellectual abilities. (R. at 252.) Luckett did note that Casey's scores put him one point away from the low average intelligence range, which was more consistent with his clinical presentation. (R. at 251.) Luckett noted that Casey's use of judgment, logic and reasoning were average, but that his coping and problem-solving skills were slightly below average. (R. at 251.) Luckett noted no evidence of anxiety difficulties. (R. at 251.)

Luckett diagnosed Casey as suffering from a depressive disorder, not otherwise specified, mild in intensity, and a pain disorder. (R. at 253.) He placed Casey's then-current Global Assessment of Functioning, ("GAF"), score at 60-62.[3] (R. at 253.) Luckett stated that Casey was capable of working and eight-hour day and a 40-hour week. (R. at 254.) Luckett stated that Casey was capable of simple, repetitive tasks, as well as some tasks with a bit more complexity. (R. at 252.)

On April 10, 2007, Dr. Richard Surrusco, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment of Casey, finding that he could perform light work with the ability to push and/or pull limited in his upper extremities. (R. at 242-47.) Dr. Surrusco further found that Casey could occasionally climb and crawl and that he was limited in his ability to reach in all directions and to handle objects. (R. at 244.)

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF score of 51 to 60 indicates "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32. A GAF score of 61 to 70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

On May 10, 2007, Joseph L. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Casey suffered from a depressive disorder and borderline intellectual functioning and that a residual functional capacity assessment was necessary. (R. at 255-68.) Leizer opined that Casey experienced moderate difficulties in maintaining concentration, persistence or pace. (R. at 265.) The same day, Leizer also completed a Mental Residual Functional Capacity Assessment of Casey, finding that he was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 269-73.) In all other areas of work-related mental abilities, Casey was deemed not significantly limited. (R. at 269-70.)

On October 3, 2007, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF, finding that Casey suffered from a depressive disorder and borderline intellectual functioning to low average IQ and that a residual functional capacity assessment was necessary. (R. at 279-93.) Leizer opined that Casey experienced moderate difficulties in maintaining concentration, persistence or pace. (R. at 289.) The same day, Leizer also completed a Mental Residual Functional Capacity Assessment of Casey, finding that he was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 274-78.) In all other areas of work-related mental abilities, Casey was deemed not significantly limited. (R. at 274-78.)

On October 11, 2007, Dr. Shirish Shahane, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment of Casey, finding that he could lift items weighing up to 20 pounds occasionally and up to 10 pounds frequently with the ability to push and/or pull limited in his upper extremities. (R. at 294-300.) Dr. Shahane further found that Casey could occasionally climb and crawl and that he was limited reaching in all directions and in handling. (R. at 296.)

On January 31, 2008, Dr. George Wagner, M.D., completed a form stating that Casey could not lift or use his right arm. (R. at 302.) Dr. Wagner's notes reflect that Casey saw him on that date for a complaint of numbness in his right shoulder. (R. at 307.) Casey complained of difficulty raising his arm fully, and Dr. Wagner noted that Casey was tender over the bursa of his shoulder. (R. at 307.) Dr. Wagner also noted tenderness, swelling and weakness in Casey's back with good range of motion and positive leg raise testing on the right. (R. at 307.) Dr. Wagner diagnosed chronic back pain with radicular symptoms on the right and chronic right shoulder pain with decreased range of motion. (R. at 307.) Dr. Wagner ordered x-rays of Casey's shoulder and an MRI of his back. (R. at 307.)

An x-ray of Casey's right shoulder taken on February 7, 2008, at The Center for Advanced Imaging was read by Dr. Robert O'Brien. (R. at 313.) The x-ray showed no acute bony abnormalities with mild degenerative changes noted at the AC joint. (R. at 313.) The x-ray also showed a metallic object, possibly a bullet, lodged over the medial aspect of the clavicle. (R. at 313.) An MRI was taken of Casey's lumbar spine on the same date. (R. at 314-15.) The MRI showed moderate disc degenerative changes present at the L4-5 and L5-S1 levels. (R. at 314.) At the L4-5

level, there was a broad-based disc protrusion, asymmetric, greater toward the left with moderate canal stenosis and significant encroachment upon the superior portion of the left lateral recess. (R. at 314.) There also was mild left and minimal right neural foraminal encroachment at this level. (R. at 314.) There also was a diffuse disc bulge with mild to moderate encroachment upon the canal at the L5-S1 level. (R. at 314.) While Dr. O'Brien stated that there was no overt neural compression, he stated that the disc bulge, combined with facet and ligamentum flavum hypertrophy, likely minimally displaced the descending nerve roots. (R. at 314.)

On March 6, 2008, Casey saw Dr. Wagner for follow-up for complaints of chronic back and shoulder pain and decreased range of motion in his right shoulder. (R. at 306.) Dr. Wagner prescribed Lorcet, physical therapy and a pain evaluation for Casey. (R. at 306.) On March 7, 2008, Dr. Wagner completed a Medical Assessment Of Ability To Do Work-Related Activities (Physical) form. (R. at 304-05.) Dr. Wagner stated that Casey could lift items weighing up to only five pounds occasionally. (R. at 304.) Dr. Wagner stated that Casey could stand and walk for one hour or less and sit for one to two hours in an eight-hour workday. (R. at 304). Dr. Wagner stated that Casey could sit for up to one hour without interruption. (R. at 304.) Dr. Wagner stated that Casey could never crawl, but could occasionally climb, stoop, kneel, balance and crouch. (R. at 305.) Dr. Wagner also stated that Casey's abilities to reach, to handle, to feel and to push/pull were affected by his impairment. (R. at 305.)

Casey returned to Dr. Wagner on May 6, 2008. (R. at 316-17.) Casey complained of pain with movement with tingling, numbness and occasional leg

weakness on the left. (R. at 316.) Casey also complained of depression and anxiety. (R. at 316.) Dr. Wagner noted lumbar tenderness, intact patella reflexes and positive straight leg raise on left. (R. at 316.) Dr. Wagner diagnosed low back syndrome, unspecified joint pain, chronic right shoulder pain and depression with anxiety. (R. at 317.) Dr. Wagner prescribed Prozac and Lortab. (R. at 317.)

Dr. Wagner noted that Casey returned to see him on July 3, 2008, for completion of paperwork for disability. (R. at 321.) Dr. Wagner noted decreased range of motion with pain in Casey's low back with spasms. (R. at 321.) Dr. Wagner stated that he filled out the disability form based on subjective symptoms only. (R. at 321.) Casey returned to Dr. Wagner on January 16, 2009. (R. at 322.) Casey reported feeling a little better on Prozac. (R. at 322.) He complained of still having low back pain, with radiation down the right leg. (R. at 322.) Dr. Wagner noted low back muscle spasm with positive leg raise on the right. (R. at 322.)

On March 25, 2009, Dr. Wagner completed a Medical Evaluation form for Casey. (R. at 325-26.) Dr. Wagner stated that Casey was unable to participate in employment and training activities in any capacity at that time. (R. at 325.) Dr. Wagner stated that Casey could participate in employment and training activities for less than 10 hours per week due to physical limitations with low back pain and psychiatric impairments. (R. at 326.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims.

*See* 20 C.F.R. §§ 404.1520, 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Casey argues that the ALJ erred in not finding that he suffered from a severe mental impairment. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-10.) Specifically, Casey argues that the ALJ erred by rejecting the opinions of the state agency psychologists and the opinion of the consultative psychologist. (Plaintiff's Brief at 8-10.) Casey also argues that the ALJ erred by improperly substituting his opinion for that of highly qualified mental health professionals. (Plaintiff's Brief at 10.) Casey further argues that the ALJ's physical residual functional capacity finding is not supported by substantial evidence. (Plaintiff's Brief at 10-13.) Specifically, Casey argues that the ALJ erred by according

controlling weight to Dr. Humphries over the opinions of the state agency physician and his treating physician. (Plaintiff's Brief at 10-13.) Finally, Casey argues that the ALJ erred by rejecting the opinion of the medical expert, Dr. Alexander. (Plaintiff's Brief at 13-14.)

Based on my review of the record, I agree that substantial evidence does not support the ALJ's finding that Casey did not have a severe mental impairment. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2010). In the context of a mental impairment, basic work activities include understanding, carrying out and remembering simple job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routing work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2010). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Every mental health professional who expressed an opinion in this case has diagnosed Casey as suffering from a depressive disorder and borderline intellectual functioning. Each of these experts also has placed restrictions on Casey's work-related mental abilities as a result. In particular, Luckett stated that Casey was capable

of performing simple, repetitive tasks, as well as some tasks with a bit more complexity. (R. at 252.) Both Joseph Leizer and Howard Leizer stated that Casey experienced moderate difficulties in maintaining concentration, persistence or pace and was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. (R. at 265, 269-70, 274-75, 289.)

Thus, the uncontradicted expert evidence shows that Casey suffered from mental impairments that had more than a minimal effect on his mental work-related abilities. Nonetheless, despite this uncontradicted evidence, the ALJ found that Casey suffered from no severe mental impairment. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional." *Grimmet v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (citing *McLain*, 715 F.2d at 869; *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). Therefore, I find that substantial evidence does not support the ALJ's finding that Casey did not suffer from a severe mental impairment.

Casey also argue that the ALJ erred by not giving controlling weight to the opinion of his treating physician, Dr. Wagner. Based on my review of the record, I find that substantial evidence supports the ALJ's finding as to Casey's physical residual functional capacity. As stated above, an ALJ may assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth

at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings. In this case, the ALJ rejected Dr. Wagner's opinion that Casey was disabled from virtually all work-related activity because it was not supported by the substantial evidence of record. Every other physician who expressed an opinion, stated that Casey was capable of performing at least a range of light work. That being the case, I find that the ALJ's rejection of Dr. Wagner's opinion is supported by the record. I further find that the ALJ's finding as to Casey's physical residual functional capacity is supported by the opinions of Dr. Humphries.

For the above-stated reasons, I find that substantial evidence does not exist in the record to support the ALJ's finding that Casey did not suffer from a severe mental impairment, and I recommend that the case be remanded to the ALJ for further consideration consistent with this Report and Recommendation.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the Commissioner's finding that Casey did not suffer from a severe mental impairment;

2. Substantial evidence exists in the record to support the Commissioner's finding as to Casey's physical residual functional capacity; and

3. Substantial evidence does not exist to support the Commissioner's finding that Casey was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Casey's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the decision of the Commissioner denying benefits and remand this case to the Commissioner for further consideration consistent with this Report and Recommendation.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the

Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: July 30, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE